**RECORD NOS. 11-4828(L); 11-4830**

*In The*

# United States Court Of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## VIC F. HENSON;
## TODD C. SNEAD,

*Defendants – Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

————————————

**BRIEF OF APPELLANTS**

————————————

**Carol Ann Bauer**
**ATTORNEY AT LAW**
**311 East Union Street**
**P.O. Box 3872**
**Morganton, NC  28680**
**(828) 430-9850**

**Steven T. Meier**
**MEIER LAW**
**1401 East 7th Street**
**Suite 200**
**Charlotte, NC  28204**
**(704) 333-3456**

*Counsel for Appellant*
*Vic F. Henson*

*Counsel for Appellant*
*Todd C. Snead*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ..............................................................................1

STATEMENT OF THE ISSUES............................................................................2

    Henson .............................................................................................................2

    Snead ...............................................................................................................2

STATEMENT OF THE CASE.................................................................................3

STATEMENT OF THE FACTS ..............................................................................5

SUMMARY OF ARGUMENT ..............................................................................12

    Henson ...........................................................................................................12

    Snead .............................................................................................................12

ARGUMENT .........................................................................................................13

    Standard of Review.......................................................................................13

    Discussion – Henson.....................................................................................13

    Discussion – Snead .......................................................................................15

CONCLUSION ......................................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

<u>Anders v. California</u>,
    386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) ...............2, 12, 13, 17

<u>United States v. Maddox</u>,
    48 F.3d 791 (4th Cir. 1995) ........................................................................14

<u>United States v. Wade</u>,
    504 U.S. 181, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992) ...........................14

<u>United States v. Wallace</u>,
    22 F.3d 84 (4th Cir. 1994) ........................................................................14

**Statutes:**

18 U.S.C. § 215(a)(1)......................................................................................1

18 U.S.C. § 215(a)(2)......................................................................................1

18 U.S.C. § 371................................................................................................1

18 U.S.C. § 1014..............................................................................................1

18 U.S.C. § 1344..............................................................................................1

18 U.S.C. § 3231..............................................................................................1

18 U.S.C. § 3553......................................................................................8, 10, 14

18 U.S.C. § 3742(a)(1).....................................................................................1

28 U.S.C. § 1291..............................................................................................1

**Sentencing Guidelines:**

U.S.S.G. § 2B1.1.................................................................................7

U.S.S.G. § 2B1.1(b)(1)(H)................................................................7

U.S.S.G. § 3B1.3..........................................................................11, 15

U.S.S.G. § 5K1.1..............................................................6, 12, 13, 15

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Subject Matter Jurisdiction was vested in the United States District Court for the Western District of North Carolina pursuant to 18 U.S.C. § 3231, 18 U.S.C. § 371, 18 U.S.C. § 1344, 18 U.S.C. § 1014, 18 U.S.C. § 215(a)(1), and 18 U.S.C. § 215(a)(2).

Appellate Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) in that the subject of this appeal is a final decision of a district court and in violation of the law.

The Judgment in a Criminal Case was filed on August 11, 2011. (JA 138-144) A *pro se* Notice of Appeal for Vic. F. Henson was filed on July 28, 2011. (JA 137). A Notice of Appeal for Todd C. Snead was filed on August 11, 2011 (JA 152).

1

## <u>STATEMENT OF THE ISSUES</u>

**Henson:**

After a review pursuant to <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), whether Ms. Henson was subjected to prosecutorial miscount when the government declined to motion for a downward departure based on substantial assistance at her sentencing hearing.

**Snead:**

Defendant Appellant Todd Snead asserts that the issue to be considered by this Court is whether the trial court committed reversible error by increasing Mr. Snead's offense level by two levels for his role in the offense.

## **STATEMENT OF THE CASE**

The Defendant/Appellant, Vic F. Henson, was indicted on June 15, 2010 along with nine other co-defendants on various charges related to a mortgage fraud scheme and a bank bribery scheme in a thirty count Bill of Indictment. (JA 13-49)

In a Plea Agreement filed on December 14, 2010, Ms. Henson agreed to plea guilty to Counts One (conspiracy to defraud the United States by mortgage fraud) and Twenty-Three (conspiracy to defraud the United States by bank bribery) of the Bill of Indictment. (JA 20-33, 45-46, 57-63)

On August 11, 2011, the District Court filed its judgment sentencing Ms. Henson to a twenty-seven month term of imprisonment on each count with the terms to run concurrently to each other. (JA 138-139)   Counts Nine, Twelve, Twenty-Six, and Twenty-Seven were dismissed upon the motion of the United States. (JA 138) This appeal follows the final judgment.

Mr. Snead was a co-defendant in the same indictment as Ms. Henson.   Mr. Snead agreed to plead guilty to Counts One (conspiracy to commit mortgage fraud), Seven (bank fraud) and Fifteen (money laundering conspiracy) in a plea agreement filed on November 24, 2010.   (JA 50-56)   The case came on for a sentencing hearing before the Honorable Max O. Cogburn, Jr. on July 21, 2011.   Judge Cogburn sentenced Mr. Snead to fifty-one months on each of the three counts to run

concurrently.   (JA 145-151)   Mr. Snead entered notice of appeal on August 12,

2011.   (JA 152)

## **STATEMENT OF THE FACTS**

Ms. Henson worked as a branch manager for Bank of America.   She helped with a false verification of deposit for the leader of the conspiracy, Drew Sharreff-El, to purchase a property at 610 Beauhaven Lane, Waxhaw, North Carolina, with the stolen identity of Leon Buckner. (JA 190)   Sharreff-El, as Buckner, made false statements including that he had over $75,000.00 on deposit with Bank of America in an account which was actually in the name of Brian Smith and Sheri Wahl and which contained a balance of zero.   After obtaining an original loan in the amount of $995,000.00 to purchase the property for an inflated price of $1,120,000.00, the property was allowed to go into foreclosure and re-sold for only $595,000.00. (JA 190)

Additionally, Ms. Henson and other co-defendants, bribed bank employees to produce false letters of credit or guarantees.   Landrick A.O. McClain was the leader of this scheme and owned Credit Risk Re Limited.   Businesses which were in need of financing or financial guarantees would be sought out.   Mr. McClain would charge these businesses several hundred thousand dollars for a financial guarantee or letter of credit from well-established financial institutions such as Bank of America with the money to be used as "collateral" for the letter.   The businesses were not aware that the letters were obtained by bribing employees of the financial institutions and therefore fraudulent.   (JA 190)

Ericka Flood was recruited by McLain to bribe bank employees to produce the fraudulent financial letters.   The scheme was reported to the FBI by a bank employee who had been approached by Flood and offered a bribe.   (JA 190)   Ms. Henson was one of the employees who accepted the bribes.   On September 4, 2007, Ms. Henson accepted an $8,000.00 bribe to prepare a letter on Bank of America letterhead for New Century Homes of the Carolinas falsely claiming that the company had a $5,000.00 line of "irrevocable standby credit." (JA 191) On October 10, 2007, Ms. Henson accepted a $30,000.00 bribe from Mr. McClain, of which she withdrew $9,000.00 for Ms. Flood's share, and produced a false letter of credit.   A couple of days later, Ms. Henson paid Ms. Flood an additional $4,000.00 from her share of the bribe. (JA 191)

Ms. Henson entered into a Plea Agreement with the government.   As noted above, she pled guilty to Counts One and Twenty-Three of the Bill of Indictment. (JA 57)   In exchange for the concessions made by the government in the Plea Agreement, Ms. Henson waived her rights to contest her conviction and/or sentence except for claims of ineffective assistance of counsel or prosecutorial misconduct. (JA 61) Additionally, Ms. Henson agreed to assist the government and if the government determined that she had rendered substantial assistance then the government would make a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 at her sentencing hearing.   (JA 61-62) The Plea Agreement showed her Base

Offense Level to be Level 6 with 16 levels added for loss pursuant to U.S.S.G. § 2B1.1 and 2 levels added for abuse of trust pursuant to U.S.S.G. § 3B1.3 for a total offense level of 24. (JA 58)

The Presentence Investigation Report corrected the loss amount in the Plea Agreement and adjusted Ms. Henson's offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(H) by increasing it by 14 levels instead of 16 levels. (JA 198, 193) After subtracting 3 levels for acceptance of responsibility, the Presentence Investigation Report showed Ms. Henson's guideline range for imprisonment to be 30 to 37 months based on a total offense level of 19 and a criminal history category of I. (JA 193, 198).

Ms. Henson filed two fairly identical Sentencing Memorandums prior to her sentencing hearing.   The memorandums point out that Ms. Henson was never called upon to assist the government.   They contend that four of the principal co-defendants entered guilty pleas after Ms. Henson entered her plea and the assumption would be that the motivating factor for the co-defendants to do so was their fear of Ms. Henson's potential testimony against them.   As an example of her willingness to be of assistance, the memorandums state that Ms. Henson did testify "at a deposition wherein two banks were in litigation" and this testimony "clearly demonstrates a willingness to assist when asked to do so."   The memorandums conclude that Ms. Henson should receive a Downward Departure. (JA 80-82)

At Ms. Henson's sentencing hearing, the government declined to move for a downward departure based on substantial assistance.   However, the parties agreed that Ms. Henson's total offense level would be 19 with a Criminal History Category of I resulting in a Sentencing Guideline range of 30 to 37 months. (JA 88)

The District Court heard Ms. Henson's motion for a variance from the guideline range which alternatively asked for a sentence at the low end of the applicable guideline range. (JA 88-89)

The government contended that Ms. Henson was never called on for assistance because she did not have any information about the defendants who pled guilty after her. (JA 89) While she did interact with Ericka Flood, Ms. Flood had already offered information which led to her arrest and conviction. (JA 90) Upon questioning by the Court about Ms. Henson being "a very low level person" in the conspiracy and about that being the potential reason for her lack of information, the government agreed the Court needed to find a "balance in terms of what she did and didn't do with some of these folks who did a lot."   (JA 90) The Court opined that since Ms. Henson was a "mule" rather than a "kingpin",   the irony of the situation was that lower levels often do not get a reduction in sentencing while the higher levels do since they can offer more information to the government. (JA 90-91) The Court stated it would consider her low level in evaluating the § 3553 factors to avoid any unwarranted sentencing disparities among the co-defendants. (JA 91)

8

The government supported the 30 to 37 month sentence and contended that while Ms. Henson was not the highest level conspirator, she was a high level employee as a branch manager at Bank of America and had been involved with both the mortgage fraud and the bank bribery conspiracies. (JA 91-92)

Ms. Henson contended that she had indeed been influential in getting Ericka Flood to plead guilty since Ms. Henson pled "about a week or ten days" before Ms. Flood which produced the assumption that Ms. Flood knew Ms. Henson was going to co-operate with the government. (JA 93)

Finding that Ms. Henson's agreement to plead guilty and co-operate with the government may have influenced Ms. Flood's decision to enter a plea, the Court decided to allow a ten percent variance which resulted in a sentencing range of 27 to 33 months.   (JA 93-94)   The Court assured the government that this reduction was on a variance basis as the government had not motioned for a 5K1.1 downward departure based on substantial assistance. (JA 94)   The government contended that such a variance would actually create an unwarranted disparity since co-defendant Todd Snead pled guilty about the same time as Ms. Henson, but he immediately set up a debriefing and offered help against Mr. Sharreff-El who was expected to go to trial. (JA 94-95)   While Ms. Henson was not debriefed about Ms. Flood, she did give "a full confession" which was "induced by" Ms. Flood's situation. (JA 95) The government contended they already had better witnesses against Ms. Flood, but

the Court decided that "better witnesses" meant defendants more involved in the illegal activity than Ms. Henson. (JA 96)

The government argued that a 25 percent reduction in sentence was recommended for Ms. Flood in part because she offered information against Ms. Henson.   Recognizing that "the causal chain went in the other direction, even though the timely need was flipped", the government acknowledged that they never intended to ask Ms. Henson for assistance.   The government also understood that with 5K1.1 recommendations, "a kingpin cooperating down on those who worked for him or her is not as high a recommendation as someone who cooperates up." (JA 96-97)

Ms. Henson expressed that she would be satisfied with a ten percent variance from the sentencing guidelines as the reduction would reflect her role in the conspiracies as well as not causing an unwarranted disparity in sentencing. (JA 99)

Looking at the 18 U.S.C. § 3553 factors, the Court recognized the fact that one of the major players did not plead guilty until after Ms. Henson entered her plea, but it was not enough for the government to motion for a downward departure.   The Court found that at the age of 42, Ms. Henson did not have any criminal record; she was a college graduate who raised two children and found other work after being criminally charged.   (JA 99-100)   Considering the § 3553 factors, including Ms. Henson's willingness to cooperate and the possibility her cooperation may have had

a small impact on a co-defendant entering a guilty plea, the Court entered a sentence with a slight variance from a Level 19 Guideline Range of 30 to 37 months to a range of 27 to 33 months.   (JA 100-101) Furthermore, the Court ordered that Ms. Henson be sentenced at the low end of the guideline range to 27 months for each count with the two counts to run concurrently. (JA 102)

As part of the same conspiracy, Mr. Snead served as a banking mortgage consultant and promoter.   Mr. Snead was responsible for a loss in four mortgage transactions totaling $2,846,693.56.   (JA 175)   At sentencing, Mr. Snead objected to paragraph 31 of the presentence report which added two levels to the base offense level pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust or use of a special skill.   The presentence investigation noted that Mr. Snead worked as a banking mortgage consultant and "used his professional affiliation and resources in order to close fraudulent mortgage loans and launder money in return for financial compensation.   Furthermore, he then used his position in the banking industry to provide financial kickbacks to himself."   (JA 176)

11

## <u>SUMMARY OF ARGUMENT</u>

**Henson:**

Appellate counsel submits an <u>Anders</u> brief on one issue: Whether Ms. Henson was subjected to prosecutorial misconduct when the government declined to move for a downward departure based on substantial assistance pursuant to U.S.S.G. § 5K1.1.

**Snead:**

Appellate counsel for Mr. Snead submits an <u>Anders</u> brief on one issue: Whether the district court committed reversible error by increasing Mr. Snead's offense level by two levels for his role in the offense.

# ARGUMENT

**Standard of Review:**

The standard of review for an <u>Anders</u> submission is a *de novo* review of the entire record and all pertinent documents to determine whether the case is wholly frivolous.   <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

**Discussion – Henson:**

The United States Sentencing Guidelines direct that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1 (2010).

In her Plea Agreement with the government, Ms. Henson agreed that if her assistance was requested by the government, then she would lend such assistance. She agreed that "[n]othing in this agreement places any obligation on the United States to seek the defendant's cooperation or assistance."   Furthermore, if Ms. Henson was called upon to assist the United States then the government "in its sole discretion, will determine whether said assistance has been substantial."   (JA 61-62)

13

Ms. Henson's assistance was not requested by the government.   (JA 89)   At her sentencing hearing, the government did not motion for a downward departure. (JA 88)

At a sentencing hearing, when the government does not have a binding obligation to motion for a downward departure based on substantial assistance, the government's refusal to make such a motion can only be challenged for unconstitutional motive or no rational relationship to a legitimate objective of the government.   United States v. Maddox, 48 F.3d 791, 795 (4th Cir. 1995) *citing* United States v. Wade, 504 U.S. 181, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992). The record does not show any evidence to support such challenges in Ms. Henson's case.

Where the government has reserved the sole discretion to determine whether or not substantial assistance has been rendered, the Court cannot grant a downward departure without the motion of the government.   United States v. Wallace, 22 F.3d 84, 87 (4th Cir. 1994).   In Ms. Henson's case, the government did reserve sole discretion to decide whether to proceed with a motion for downward departure based on substantial assistance.   (JA 62) While the Court granted a variance from the guideline range, the Court made it clear that the variance was based entirely on § 3553 factors. (JA 100-101)

Since appellate counsel is unable to show from the record that the government committed prosecutorial misconduct in declining to motion for a downward departure for substantial assistance based on U.S.S.G. § 5K1.1, Ms. Henson is asking this Court to review the record to see if any error occurred which would entitle her to some relief.

**Discussion – Snead:**

At sentencing of Todd Snead, Mr. Snead argued – and reiterates herein – that it was inappropriate to apply U.S.S.G. § 3B1.3 thereby increasing the guidelines calculation by two levels when the position of trust or special skill at issue were part of the underlying offense and are duplicative of the computations in paragraph 27 (base offense level) and paragraph 29 (specific offense characteristics).   Section 3B1.3 states in part, however, that "[t]his adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic."

Application note one states that this enhancement refers to person who has a position "characterized by professional or managerial discretion…Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature."   An example is even given of a "bank executive's fraudulent loan scheme."   Mr. Snead was not a bank executive.   He is identified in the presentence investigation as a "banking

mortgage consultant" for Suntrust Bank.   (JA 173)   Paragraph 31 states that he used his "professional affiliation and resources in order to close fraudulent mortgage loans."   (JA 176)   The record does not support any finding that he served in an executive capacity with professional or managerial discretion such that his position was not supervised to such an extent that he was able to facilitate these transactions such that another individual could not.

Application note four looks at the "special skill" characteristic of the enhancement and states that it "refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts."   The presentence report states that Mr. Snead graduated high school with a 1.09 GPA.   His only other training was a community college certificate in banking and finance and some insurance licenses.   (JA 180)   This is hardly the type of substantial education and training as a pilot, lawyer or doctor would have.

In short, the two-level enhancement for abuse of a position of trust or use of a special skill did not apply to Mr. Snead's actions in the case and the district court committed reversible error in overruling that objection to the presentence investigation report.

16

## <u>CONCLUSION</u>

Appellate Counsel respectfully requests that this Court conduct a full examination of the record in Ms. Henson and Mr. Snead's cases for possible prejudicial error and to determine whether any justifiable issue has been overlooked by counsel.   In accordance with <u>Anders v. California</u>, 386 U.S. 738, 87 S. Ct. 1386, 18 L. Ed. 2d 493 (1967), Counsel submit this brief in order to provide what assistance they can to the Court in conducting its review.   A copy of the Joint Appendix and this brief will be sent to Ms. Henson and to Mr. Snead.   Counsel respectfully request that this Court allow Ms. Henson and Mr. Snead time "to raise any points that [s]he chooses" in support of his or her appeal.   <u>Anders</u>, 386 U.S. at 744, 87 S. Ct. at 1400, 18 L. Ed.2d at 298.

Respectfully submitted, this the 21st day of October, 2011.

/s/ Carol Ann Bauer
Carol Ann Bauer, NC Bar No. 21915
P.O. Box 3872
Morganton, NC 28680-3872
(828) 430-9850 - telephone

*Counsel for Appellant Vic Henson*

/s/ Steven T. Meier
Steven T. Meier, NC Bar No. 24412
1401 East Seventh Street
Charlotte, NC   28204
(704) 333-3456

*Counsel for Appellant Todd Snead*

17

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

              this Appellant's brief contains <u>3,194</u> words, excluding the parts of the
              brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

              this brief has been prepared in a proportionally spaced typeface using
              <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


                                    <u>/s/  *Carol Ann Bauer*    </u>
                                    Carol Ann Bauer

Dated:  October 21, 2011

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 21, 2011, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE
>   UNITED STATES ATTORNEY
> United States Courthouse
> 100 Otis Street, Room 233
> Asheville, NC  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that one copy of the brief was mailed, first class, postage

pre-paid to the Defendants at their last known address of:

> Vic F. Henson
> Reg. No. 61958-079
> 10114 Mayhurst Court
> Charlotte, NC 28213
>
> Todd C. Snead
> Reg. No. 05829-084
> FCI Gilmer
> Federal Correctional Institution
> Glenville, WV 26351

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/  *Carly A. Ramey*
Carly A. Ramey
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219